1  Valerie W. Ho (SBN 200505)
2  *valerie.ho@gtlaw.com*
   Jennifer C. Cooper (SBN 324804)
3  *jennifer.cooper@gtlaw.com*
4  GREENBERG TRAURIG, LLP
   1840 Century Park East, Suite 1900
5  Los Angeles, California 90067-2121
6  Telephone: 310.586.7700

7  Attorneys Plaintiff
8  GATECHINA, INC.

9

10             **UNITED STATES DISTRICT COURT**

11        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12

| GATECHINA, INC., a California corporation; | Case No. |
|---|---|
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. Copyright Infringement** |
| FARA INC., a Delaware corporation d/b/a KANTIE.ORG; JUNYU CHEN, an Individual; HAOJIE CHEN, an Individual; and DOES 1 through 10, inclusive, | **2. Contributory/Vicarious Copyright Infringement** |
| Defendants. | **3. Unregistered Trademark Infringement and Unfair Competition under the Lanham Act** |
| | **4. Common Law Trademark Infringement and Unfair Competition** |
| | **5. Contributory/Vicarious Trademark Infringement and Unfair Competition** |
| | **6. Breach of Contract** |
| | **JURY TRIAL DEMANDED** |

Plaintiff GateChina, Inc. ("Plaintiff" or "GateChina"), by and through its counsel, for its Complaint against Defendants Fara Inc. d/b/a Kantie.org ("Kantie"), Junyu Chen and Haojie Chen (collectively, "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1.    This action arises under the copyright laws, 17 U.S.C. §§ 101 et seq., and trademark laws, 15 U.S.C. §§ 1502 et seq., of the United States.  This Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.  In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.    This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants (a) operate the infringing Kantie.org website from a location in Southern California; (b) on information and belief, regularly do or solicit business in the State of California, (b) regularly scrape Plaintiff's wenxuecity.com website and target Plaintiff, a California corporation, with persistent tortious conduct undertaken in the State of California, (c) on information and belief, derive substantial revenue from individuals and entities located in the State of California, (d) is causing or is likely to cause consumer confusion in the State of California, and (e) expect or should reasonably expect their acts to have consequences in the State of California. In addition, this Court has personal jurisdiction over Defendants Junyu Chen and Haojie Chen because, upon information and belief, they reside in Southern California and may be found in this District.

3.    Venue is appropriate under 28 U.S.C. §§ 1391 and 1400 because Defendants reside in this District, a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendants' actions caused injury in this District.

## THE PARTIES

4.    Plaintiff GateChina, Inc. is a California corporation with its principal place of business in Fremont, California. Plaintiff is the owner and operator of the Chinese language

1  news and online community platform, www.wenxuecity.com, and mobile application (the
2  "Wenxuecity Website").

3      5.    Upon information and belief, Defendant Fara Inc., d/b/a Kantie.org, is a
4  Delaware corporation with its principal place of business in Southern California.  Upon
5  information and belief, Defendant Fara Inc. owns and operates the website www.kantie.org
6  (the "Kantie Website") and the Kantie.org mobile application.

7      6.    Defendant Junyu Chen is a California resident who, upon information and
8  belief, resides in Diamond Bar and/or Chino, California. On information and belief,
9  Defendant Junyu Chen is the founder and Chief Financial Officer of Defendant Fara Inc.
10  and, at all relevant times, personally engaged in, supervised and directed the infringing and
11  wrongful conduct alleged herein.

12      7.    Upon information and belief, Defendant Haojie Chen is a California resident.
13  Upon information and belief, Defendant Haojie Chen is the founder, Chief Executive
14  Officer and Secretary of Defendant Fara Inc. and, at all relevant times, personally engaged
15  in, supervised and directed the infringing and wrongful conduct alleged herein. Defendant
16  Haojie Chen and Defendant Junyu Chen are referred to herein together as the "Individual
17  Defendants."

18      8.    The true names and capacities, whether individual, corporate, or otherwise, of
19  the defendants sued as DOES 1 through 10 are unknown to Plaintiff, who, therefore, sues
20  them by such fictitious names. At such time as their true names and capacities have been
21  ascertained, Plaintiff will seek leave of court to amend this Complaint accordingly. On
22  information and belief, Plaintiff alleges that each of DOES 1 through 10 was the agent,
23  representative, or employee of each of the Defendants and was acting at all times within the
24  scope of his or her agency or representative capacity, with the knowledge and consent of
25  the Defendants, and that each of DOES 1 through 10 are liable to Plaintiff in connection
26  with one or more of the claims alleged herein and are responsible in some manner for the
27  wrongful acts and conduct alleged here.

28

COMPLAINT

## FACTUAL ALLEGATIONS

### *GateChina and the Wenxuecity Website*

9.    GateChina owns and operates the Wenxuecity Website, a Chinese-language news and online community forum serving Chinese readers outside of China.  GateChina's primary source of revenue is from selling digital advertising on the Wenxuecity Website.

10.    Established in 1997, the Wenxuecity Website has become one of the largest overseas Chinese news and online community forums in the world and is one of the most visited Chinese-language websites for Chinese expatriates. The Wenxuecity Website has approximately 2 million unique visitors and 40 million pageviews each month. About 70% of the Wenxuecity Website's total traffic comes from users located within the United States.

11.    Over the course of 28 years, the Wenxuecity Website has grown into one of the most trusted, highly regarded, and heavily trafficked Chinese-language websites and online news sources for the overseas Chinese community. Based on audience size and traffic, the Wenxuecity Website is currently ranked No. 1781 in the United States and No. 6852 worldwide according to Similarweb's recent website rankings.

12.    The Wenxuecity Website contains news articles, blogs and forums hosting user generated content about various topics of interest to the overseas Chinese community. The content available on the Wenxuecity Website includes, among other things, original written content and articles that are translated into the Chinese language by GateChina's staff.

13.    GateChina spends a significant amount of time, money, and effort to create, translate and publish the content on the Wenxuecity Website, to enable its readers to stay informed and engaged without the obstacle of having to overcome a difficult language barrier.

14.    The Terms of Use and Privacy Policy (the "Wenxuecity Terms"), attached hereto as Exhibit A, constitute a legally binding agreement between GateChina and each user of the Wenxuecity Website and sets forth the terms and conditions that visitors must comply with when using the Wenxuecity Website.

15.    The Wenxuecity Terms grant each user a "non-exclusive, non-sublicensable, revocable … [and] non-transferable license" to use the Wenxuecity Website. This license allows users who "manually access" the Wenxuecity Website to "view and download a single copy of the select content . . . solely for lawful, non-commercial, and personal use … and only as expressly permitted by and subject to the conditions and restrictions" of the Wenxuecity Terms.

16.    The Wenxuecity Terms further make clear that the license is conditioned upon the user's compliance with the terms and conditions and that the user's rights in the license will "immediately terminate" in the event the user breaches any of the provisions contained in the Wenxuecity Terms.

17.    The Wenxuecity Terms "grants [users] no rights in or to the intellectual property of" Gate China, and requires users to "represent and warrant that, when using the Website and Services, [they] will obey the law and respect the intellectual property rights of" GateChina.

18.    With respect to GateChina's intellectual property rights, the Wenxuecity Terms state as follows:

    a.    "The Website, or any portion of the Website, including WenXueCity Content may not be reproduced, duplicated, copied, displayed, modified, sold, resold, distributed, transmitted, or otherwise exploited for any commercial purpose without the express written consent of WenXueCity.  If you access the Website or reproduce, duplicate, copy, display, modify, sell, resell, distribute, transmit, or otherwise exploit the Website, or any portion thereof, or other WenXueCity intellectual property, including without limitation WenXueCity's registered trademarks or any WenXueCity Content, your access and other conduct is expressly unauthorized and subjects your limited license to immediate and final termination."

    b.    "You also hereby represent and warrant that you will not copy, aggregate, harvest or otherwise collect WenXueCity Content, including text, photos,

videos, or any other original content published on WenXueCity in any expressive digital format or medium, from the Website, for any use that violates the United States Copyright Act, including without limitation display, distribution, performance, or derivative use on third-party websites or through third-party mobile applications, either directly or through intermediaries."

c. "All content and other materials available through the Website and Services, including without limitation the WenXueCity logo, design, text, graphics, and other files, and the selection, arrangement, and organization thereof, are either owned by GateChina, Inc. or are the property of GateChina, Inc.'s licensors and suppliers."

d. "WENXUECITY" and the WenXueCity logo (collectively, the "WenXueCity Marks") are trademarks or registered trademarks of GateChina, Inc. … Neither Your use of the Website and Services nor this Agreement grant You any right, title or interest in or to, or any license to reproduce or otherwise use, the WenXueCity Marks or any third-party trademarks, service marks, graphics, logos, or domain names."

e. "You agree that any goodwill in the WenXueCity Marks generated as a result of Your use of the Website and Services will inure to the benefit of GateChina, Inc., and You agree to assign, and hereby do assign, all such goodwill to GateChina, Inc. You shall not at any time, nor shall You assist others to, challenge GateChina, Inc.'s right, title, or interest in or to, or the validity of, the WenXueCity Marks."

19.    In all capital letters, the Wenxuecity Terms conspicuously state that users "MAY NOT USE SCRAPING BOTS TO ACCESS THIS WEBSITE OR COPY ANY OF ITS CONTENTS." In addition, users "represent and warrant that [they] will not engage in any of the following uses, which are expressly prohibited under [the Wenxuecity Terms]: (a) use or attempt to use any spiders, robots, crawlers, avatars, fake profiles, scrapers, engines, software, tools, agents, or other device or technological mechanism to copy,

aggregate, harvest or otherwise collect WenXueCity Content, including text, photos, videos, or any other original content published on WenXueCity in any expressive digital format or medium, from the Website, for any use, including without limitation display, distribution, performance, or derivative use on third-party websites or through third-party mobile applications, either directly or through intermediaries ….”

20.    By accessing the Wenxuecity Website and thereby agreeing to the Wenxuecity Terms, users “promise and agree not ever to reproduce any WenXueCity Content that [they] access through the Website and/or Services in order to unfairly compete or obtain unfair advantage vis-a-vis WenXueCity in any commercial activity which may be comparable to the commercial activity of WenXueCity, including without limitation, the commercial operation of a mobile application.” Users are provided with “complete legal and actual notice that any commercial use of WenXueCity Content that is not expressly authorized in a written licensing agreement violates WenXueCity’s rights.”

### GateChina’s Copyrighted Works

21.    GateChina enjoys exclusive copyright ownership and protection with respect to the original published works and the Chinese-language translations of third-party articles published on the Wenxuecity Website.

22.    GateChina owns United States Copyright Registrations for the following articles published on the Wenxuecity Website (the “Wenxuecity Copyrighted Works”), the registration certificates for which are attached hereto as Exhibits B - G:

| Title of Work | U.S. Copyright Registration | Defendants’ Infringing Article on Kantie.org |
|---|---|---|
| Te Lang Pu Tui “Zi Wo Qian Fan” App: Rang Shu Bai Wan Ren Xian Ru Wei Ji (Google translation: Trump pushes “self-repatriation” app: putting millions of people in crisis) | TXu 2-481-440 Exhibit B (Chinese article and Google translation) | Exhibit H (Chinese article and Google translation) |
| Dui Chuan Pu Zui You Li De Zhi Heng Bu Shi Guo Hui Fa Yuan Min Yi Er Shi Zhe Ge (Google translation: The most | TXu 2-482-709 Exhibit C (Chinese article and Google translation) | Exhibit I (Chinese article and Google translation) |

| | | |
|---|---|---|
| powerful checks and balances on Trump are not Congress, the courts, or public opinion but this) | | |
| Kong Bu! Hao Hua You Lun Yu Qiang Feng Tu Ran Qing 14 Du Cang Nei Chang Mian Xia Ren… (Google translation: Terror! The luxury cruise ship suddenly tilted 14 degrees in a strong wind, and the scene in the cabin was scary…) | TXu 2-477-353 Exhibit D (Chinese article and Google translation) | Exhibit J (Chinese article and Google translation) |
| Gong He Dang Yuan: Zhi Chi Chuan Pu Zong Tong Mei Guo Ren Min Yuan Yi Cheng Shou Gao Wu Jia (Google translation: Republican lawmakers: Support President Trump The American people are willing to bear high prices) | TXu 2-476-872 Exhibit E (Chinese article and Google translation) | Exhibit K (Chinese article and Google translation) |
| Jia Zhou Hua Nv Shi Zong Jin Yi Nian Sheng Ji Wei Mou Sha Bai Ren Zhang Fu Shou Fa Sheng (Google translation: The disappearance of a Chinese woman in California for nearly a year escalated into a murder by a white husband) | TXu 2-481-437 Exhibit F (Chinese article and Google translation) | Exhibit L (Chinese article and Google translation) |
| Ze Lian Si Ji: Jiang Zai Chuan Pu Ling Dao Xia Gong Zuo Shang Zhou Wu Ling Ren Yi Han… (Google translation: Zelensky: Will work under Trump Last Friday was really regrettable… | TXu 2-477-319 Exhibit G (Chinese article and Google translation) | Exhibit M (Chinese article and Google translation) |

### *The Wenxuecity Marks*

23.    GateChina is the owner of all rights, title and interest in and to the "WENXUECITY" name and trademark, the GateChina/WenXueCity logo (as depicted

below and on the Wenxuecity Website), and the domain www.wenxuecity.com (collectively, the "Wenxuecity Marks"). "Wenwuecity" is the partial ping ying translation of the Chinese characters depicted in the logo below. The Chinese characters mean "City of Literature."



24.     Since as early as 1997, GateChina has used the Wenxuecity Marks on the Wenxuecity Website and in connection with the promotion of the Wenxuecity Website.

25.     Through many years of continuous use, and by virtue of the extensive time, money and effort expended by GateChina in connection with cultivating and promoting the Wenxuecity Website, the Wenxuecity Marks have become well-known among the Chinese population living in the United States and the State of California.

26.     The Wenxuecity Marks have acquired distinctiveness among the Chinese population in the United States and the State of California who associate the Wenxuecity Marks exclusively with GateChina.

*Defendants' Willful Infringement of GateChina's Copyrighted Works and the Wenxuecity Marks*

27.     On information and belief, Defendants own and operate the website Kantie.org (the "Kantie Website"). Unlike GateChina, Defendants do not create the content published and distributed on the Kantie Website. Instead, on information and belief, Defendants employ "crawl bots" to extract Internet content and articles from third-party websites and republish verbatim copies of those works, in their entirety and without the copyright owner's consent, on the Kantie Website.

28.     In the Terms of Service on the Kantie Website (the "Kantie Terms"), which were last updated on August 8, 2016, Defendants falsely represent that the "Content found

on or through [the Kantie Website] are the property of [Defendants] or used with permission." *See* https://kantie.org/tos.

29.    Defendants have been scraping GateChina's copyrighted content, as well as the third-party content, published on the Wenxuecity Website and—without license or permission, and in violation of the Wenxuecity Terms—re-publishing the unlawfully scraped content, word for word, on the Kantie Website.

30.    The Kantie Website contained dozens of GateChina's articles, including verbatim copies of the Wenxuecity Copyrighted Works. The infringing articles and English translations created through the Google Translate tool are attached hereto as Exhibits H - M and identified in the chart above in Paragraph 22.

31.    Defendants' wholesale copying of the Wenxuecity Website, including GateChina's copyrighted articles, constitutes willful copyright infringement under the United States Copyright Act of 1976, 17 U.S.C. § 501, and a material breach of the Wenxuecity Terms.

32.    Defendants' copyright infringement was clearly willful because when it copied GateChina's articles verbatim for re-publication, it even copied GateChina's Wenxuecity name and mark.

33.    Moreover, even after receiving GateChina's cease-and-desist letter in June 2025, Defendants did not take down all of the infringing articles. For example, the article attached as Exhibit L is still on the Kantie Website.

34.    In addition to their willful copyright infringement, Defendants have also been unlawfully using the Wenxuecity Marks, including the "WENXUECITY" name and trademark, throughout the Kantie Website, on the website's landing page, and in connection with the promotion of the infringing articles identified above.

35.    When translated to English, "WENXUECITY" means "Literature City." Copying the green and white color scheme of the Wenxuecity Website, the homepage of the Kantie Website included a green and white button that depicts the Chinese characters for "WENXUECITY," as depicted below:



36.    A copy of the Kantie Website's homepage, as well as the English-translated version of the homepage, as it appeared on June 5, 2025 is attached hereto as <u>Exhibit N</u>.

37.    In June 2025, GateChina sent a cease-and-desist letter to Defendants. After receiving the letter, Defendants changed the Chinese character for "city" in "WENXUECITY" on the Kantie Website's landing page to a Chinese character that appears very similar to the Chinese character for "city" but is instead a seldom used Chinese character referring to a mountain, such that to the casual observer reading quickly, the landing page of the Kantie Website still references "WENXUECITY," as depicted below:



COMPLAINT

38.    A copy of the Kantie Website's homepage, as it appeared on August 14, 2025 is attached hereto as <u>Exhibit O</u>. This constitutes irrefutable evidence of Defendants' intent to trade off GateChina's WENXUECITY name and mark.

39.    Defendants' unauthorized use of the Wenxuecity Marks have already caused and will continue to cause consumer confusion. Online users who visit the Kantie Website are likely to be misled into believing that the Kantie Website is affiliated with, sponsored by, or owned or controlled by GateChina.

40.    In 2024, GateChina was sued for defamation in the United Kingdom in connection with an article that was published on the Wenxuecity Website. It removed the article in question from its own website but had to expend substantial attorneys' fees to explain to the plaintiffs and the Court that, notwithstanding the fact that GateChina's name and mark were all over the Kantie Website, it could not take down the identical article that was copied and published by Defendants on the Kantie Website because it did not own, control or have any affiliation with Defendants' website.

41.    In the July 14, 2025 judgment issued in the United Kingdom defamation case, the Court acknowledged that "the Claimants served a series of documents which appeared to suggest that defamatory statements were still online. However, most came from websites called kantie.org … which is [not] related to [GateChina]. Kantie is a third-party tool that employs 'crawl bots' to extract and replicate internet content. It is therefore likely that Kantie had replicated some of the content of D3's website before the relevant deletions were made."

42.    As a result of Defendants' willful and unlawful copying of GateChina's content and marks, GateChina was forced to expend significant time and resources to convince the United Kingdom claimants and Court that no affiliation existed between GateChina and the Kantie Website.

43.    Defendants' infringing use of the Wenxuecity Marks constitutes common law trademark infringement, unfair competition and a material breach of the Wenxuecity Terms.

It has also caused GateChina reputational and monetary damage, including the substantial attorneys' fees it has had to incur in the United Kingdom defamation lawsuit.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement – Against All Defendants)

44.    GateChina re-alleges and incorporates herein by reference Paragraphs 1 - 43 set forth above.

45.    GateChina owns the Wenxuecity Copyrighted Works, which have been registered with the United States Copyright Office. The registration certificates, deposits and English translations created through the Google Translate tool for the Wenxuecity Copyrighted Works are attached hereto as Exhibits B - G.

46.    Defendants have been unlawfully scraping content from the Wenxuecity Website and have copied, reproduced, displayed, published and distributed GateChina's copyrighted works, including the Wenxuecity Copyrighted Works, without license or permission from GateChina.

47.    Defendants' conduct violates the exclusive rights belonging to GateChina as the owner of the Wenxuecity Copyrighted Works, including without limitation, GateChina's rights under 17 U.S.C. § 106.

48.    Defendants' conduct constitutes direct and willful copyright infringement under 17 U.S.C. § 501. Defendants' infringements were and are willful, and executed with full knowledge of GateChina's copyrights, and in conscious disregard for GateChina's exclusive rights in the Wenxuecity Copyrighted Works.

49.    As a direct and proximate result of the copyright infringement described above, GateChina is entitled to relief including, but not limited to, actual damages and profits of the Defendants from the infringement. Alternatively, GateChina may elect to recover statutory damages for willful copyright infringement in the amount of up to $150,000 per copyright infringed (or up to $900,000), plus attorneys' fees, costs and prejudgment interest. 17 U.S.C. § 504(c)(2).

50.    GateChina has no adequate remedy at law for, and is being irreparably harmed by, Defendants' infringement of GateChina's copyrights, and such harm will continue unless Defendants are enjoined by this Court.

51.    Pursuant to 17 U.S.C. § 503, GateChina is entitled to preliminary and permanent injunctions prohibiting further infringement of GateChina's copyrighted works.

## SECOND CLAIM FOR RELIEF

**(Contributory/Vicarious Copyright Infringement – Against Individual Defendants)**

52.    GateChina re-alleges and incorporates herein by reference Paragraphs 1 - 51 set forth above.

53.    On information and belief, the Individual Defendants knowingly induced, participated in, aided and abetted, and profited from Defendant Fara Inc.'s and the Kantie Website's unlawful reproduction, publication, display, distribution, marketing and advertisement of the Wenxuecity Copyrighted Works. On information and belief, Individual Defendants created the scraping tools that allowed Defendant Fara Inc. to copy the content from the Wenxuecity Website.

54.    On information and belief, the Individual Defendants knew or had reason to know of GateChina's rights in the Wenxuecity Copyrighted Works and that Defendant Fara Inc. would be engaging in copyright infringement.

55.    On information and belief, the Individual Defendants are vicariously liable for the copyright infringement alleged herein because they had the right and ability to supervise the infringing conduct of Defendant Fara Inc. and had a direct financial interest in, and received a direct financial benefit from, the infringing activity.

56.    By reason of the Individual Defendants' acts of contributory and/or vicarious infringement as alleged herein, GateChina has suffered and will continue to suffer substantial damages, including lost revenue and reputational harm, in an amount to be established at trial.

57.    The Individual Defendants have unlawfully obtained direct and indirect profits that they would not have otherwise realized but for their wrongful conduct. GateChina

therefore is entitled to recover all gains, profits and advantages derived from the Individual Defendants' contributory and/or vicarious infringement, in an amount to be established at trial. Alternatively, GateChina may elect to recover statutory damages for willful contributory and/or vicarious copyright infringement in the amount of up to $150,000 per copyright infringed (or up to $900,000), plus attorneys' fees, costs and prejudgment interest.

## THIRD CLAIM FOR RELIEF

### (Unregistered Trademark Infringement and Unfair Competition, 15 U.S.C. § 1125(a) – Against all Defendants)

58.    GateChina re-alleges and incorporates herein by reference Paragraphs 1 - 57 set forth above.

59.    GateChina possesses valid and enforceable rights in the Wenxuecity Marks in connection with the services at issue in this case by virtue of its extensive use, promotion, and advertisement of the Wenxuecity Marks in the United States, and by widespread recognition by a substantial percentage of relevant consumers and users of the Wenxuecity Website, and has possessed such rights at all times material hereto.

60.    Defendants' unauthorized use of the Wenxuecity Marks in connection with their distribution, sale, offering for sale, marketing, and advertising of their services, including on the Kantie Website, constitutes a use in commerce that is likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship, or approval by GateChina of Defendants' services or commercial activities, thereby enabling Defendants to benefit unfairly from GateChina's reputation, goodwill, and success.

61.    Defendants' actions complained of herein thus constitutes infringement of GateChina's unregistered trademarks, unfair competition, and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.    Defendants' actions complained of herein have been and continue to be intentional, willful, and made in bad faith.

63.    GateChina has sustained and is likely to sustain damages as a direct and proximate result of Defendant's actions complained of herein. GateChina is entitled to recover its lost profits and/or Defendants' profits from the infringement.

64.    Defendants' actions have caused and—unless enjoined by this Court—will continue to cause irreparable injury to GateChina for which GateChina has no adequate remedy at law. GateChina is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from use of the Wenxuecity Marks or any other mark that is confusingly similar thereto.

65.    This is an exceptional case for which GateChina seeks an award of treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## FOURTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement, False Association and Unfair Competition – Against All Defendants)

66.    GateChina re-alleges and incorporates herein by reference Paragraphs 1 - 65 set forth above.

67.    GateChina owns common law rights in and to its Wenxuecity Marks.

68.    Defendants have, without authorization from GateChina, used the Wenxuecity Marks or a confusingly similar mark on the Kantie Website and to promote the Kantie Website to users and advertisers.

69.    Defendants' aforesaid conduct constitutes common law trademark infringement, false association, and unfair competition under the common law of the State of California.

70.    Defendants have unfairly and intentionally used the Wenxuecity Marks to misrepresent their services and/or content as originating from or being associated with, sponsored by, affiliated with, or approved by GateChina.

71.    Defendants have engaged in such unfair and improper conduct to trade off of, and benefit from, GateChina's reputation and goodwill in its Wenxuecity Marks.

72.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to GateChina.

73.    GateChina has no adequate remedy at law.

74.    Defendants' conduct is intentional, malicious and wanton in that Defendants infringed and continue to infringe GateChina's common law trademarks: (i) with full knowledge that GateChina owns and has the exclusive right to use its common law trademarks; and (ii) with the intention of causing a likelihood of confusion and mistake and to deceive.

75.    As a direct and proximate result of Defendants' wrongful conduct, GateChina has been damaged in an amount to be determined at trial, in addition to pre-judgment interest and costs.

76.    Defendants' willful acts of trademark infringement under California common law constitute fraud, oppression, and malice. Accordingly, GateChina is entitled to punitive damages.

## FIFTH CLAIM FOR RELIEF
### (Contributory/Vicarious Liability for and/or Inducement of Trademark Infringement, False Association, False Designation of Origin, and Unfair Competition – Against Individual Defendants)

77.    GateChina re-alleges and incorporates herein by reference Paragraphs 1 - 76 set forth above.

78.    Defendant Fara Inc. directly infringed the Wenxuecity Marks, and/or is directly liable for false association and unfair competition, as fully described above.

79.    The Individual Defendants knew or had reason to know of GateChina's rights in the Wenxuecity Marks and that Defendant Fara Inc. would be engaging in infringement, false association, and unfair competition through use of the Wenxuecity Marks or a confusingly similar mark.

80.    On information and belief, the Individual Defendants knowingly induced, participated in, aided and abetted, and profited from Defendant Fara Inc.'s unlawful use of

the Wenxuecity Marks. On information and belief, Individual Defendants created the scraping tools that allowed Defendant Fara Inc. to copy the content from the Wenxuecity Website, including the Wenxuecity Marks.

81.    On information and belief, the Individual Defendants are vicariously liable for Defendant Fara Inc.'s trademark infringement, false association and unfair competition as alleged herein because they had the right and ability to supervise the wrongful conduct of Defendant Fara Inc. and had a direct financial interest in, and received a direct financial benefit from, the infringing activity.

82.    The Individual Defendants' actions complained of herein have been and continue to be intentional, willful, and done in bad faith.

83.    GateChina has sustained and is likely to sustain further damages as a direct and proximate result of the Individual Defendants' actions complained of herein. GateChina is entitled to recover its lost profits and/or Individual Defendants' profits from the infringement.

84.    The Individual Defendants' actions have caused and—unless enjoined by this Court—will continue to cause irreparable injury to GateChina for which GateChina has no adequate remedy at law. GateChina is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from use of the Wenxuecity Marks or any other mark that is confusingly similar thereto.

85.    This is an exceptional case for which GateChina seeks an award of treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## SIXTH CLAIM FOR RELIEF

### (Breach of Contract - Against all Defendants)

86.    GateChina re-alleges and incorporates herein by reference Paragraphs 1 – 85 set forth above.

87.    The Wenxuecity Terms, attached hereto as <u>Exhibit A</u>, is a valid and enforceable agreement between Defendants and GateChina.

88.     The Wenxuecity Terms are conspicuously shown on the Wenxuecity Website. The Wenxuecity Terms clearly state:

- "Your access to and use of the Service is conditioned on Your acceptance of and compliance with these Terms and Conditions. These Terms and Conditions apply to all visitors, users and others who access or use the Service." Exhibit A at 2.

- "By accessing or using the Service You agree to be bound by these Terms and Conditions. If You disagree with any part of these Terms and Conditions then You may not access the Service." Exhibit A at 2.

89.     Under the Wenxuecity Terms, Defendants had an obligation not to reproduce, modify, sell, distribute, transmit, or otherwise exploit any portion of the Wenxuecity Website, including the Wenxuecity Copyrighted Works and the Wenxuecity Marks, for any commercial purpose without the express written consent of GateChina.

90.     By using or accessing the Wenxuecity Website, Defendants agreed that they would not use or attempt to use any spiders, robots, crawlers, avatars, fake profiles, scrapers, engines, software, tools, agents, or other device or technological mechanism to copy, aggregate, harvest or otherwise collect the content published on the Wenxuecity Website for any use, including without limitation, display, distribution, performance, or derivative use on third-party websites or through third-party mobile applications, either directly or through intermediaries.

91.     By using or accessing the Wenxuecity Website, Defendants also agreed "not ever to reproduce any WenXueCity Content" that they accessed on the Wenxuecity Website "in order to unfairly compete or obtain unfair advantage vis-a-vis [GateChina] in any commercial activity which may be comparable to the commercial activity of [GateChina], including without limitation, the commercial operation of a mobile application."

92.     GateChina has fully performed all its obligations and has satisfied all conditions for performance under the Wenxuecity Terms.

93.    Defendants materially breached the Wenxuecity Terms by unlawfully scraping GateChina's content and copying its trademarks, as well as the third-party content, published on the Wenxuecity Website and re-publishing the scraped content, word for word, on the Kantie Website.

94.    As a foreseeable, direct, and proximate result of Defendants' material breach of the Wenxuecity Terms, GateChina suffered monetary damages, including the substantial attorneys' fees it had to incur in the United Kingdom defamation case to explain that GateChina is not affiliated with and does not own or control the Kantie Website.

95.    Defendants derived and received and will continue to derive and receive from the breach of contract, gains, profits, and advantages, many of which are not presently known to GateChina. As a result, Defendants should be required to disgorge these gains, profits, and advantages in restitution for their breach.

## PRAYER FOR RELIEF

WHEREFORE, GateChina prays for judgment in its favor and against Defendants, including but not limited to, an award of the following relief:

1.    GateChina's actual damages and Defendants' profits in an amount to be ascertained or, in the alternative, for statutory damages against Defendants and each of them in the amount of up to $150,000 per copyright infringed for willful copyright infringement;

2.    GateChina's actual damages and Defendants' profits from trademark infringement, false designation and unfair competition, that amount to be trebled for willful infringement;

3.    GateChina's damages for Defendants' common law trademark infringement and unfair competition under California law and for Defendants breach of contract;

4.    Punitive and exemplary damages according to proof;

5.    A finding that this case is exceptional under 15 U.S.C. § 1117;

6.    GateChina's reasonable attorney's fees and costs of suit pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117;

7.    Such other and further relief as this Court deems just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff GreatChina, Inc. hereby demands a trial by jury on all issues triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated:  August 15, 2025               GREENBERG TRAURIG, LLP


By: */s/Valerie W. Ho*
Valerie W. Ho
Jennifer C. Cooper

Attorneys for Plaintiff
GATECHINA, INC.

COMPLAINT